**IN THE UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | |
|---|---|
| IN RE: | **Case No.:**   **23-43044-ELM-11** |
| | **Chapter:**      **11** |
| **Eagle Trucklines, Inc.,** | |
| Debtors.[1] | **Jointly Administered** |

### DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION
### [DATED JANUARY 12, 2024]

Pursuant to section 1121(a) of the Bankruptcy Code[2], Eagle Trucklines, Inc, Eagle Trans, Inc., and Eagle Fast Ways, Inc., debtors and debtors in possession in the above-styled and numbered cases (collectively, the "**Debtors**"), hereby proposes this Plan of Reorganization.

### INTRODUCTION

The purpose of this Plan to provide the details of the Debtors' proposed reorganization and proposed distributions of money and/or property to their respective Creditors. After the Plan has been confirmed, the Bankruptcy Court will retain jurisdiction to determine the allowance of all Claims and to effectuate and enforce the terms of this Plan.

### BACKGROUND

#### Business History and Operations

The Debtors conduct "over-the-road" trucking operations; transporting goods and products nationwide. The Debtors operate as a single economic unit. The sole shareholder of each of the Debtors is Gurinder Chouhan. Mr. Chohan also serves as the president of each Debtor.

### CONDITIONS TO CONFIRMATION

The Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Plan as **Exhibit "A"**.

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan. The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan payments. Attached as **Exhibit "B"** is a five (5) year projection of Debtors' revenue and expenses.

---

[1] The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Eagle Trucklines, Inc., (8689), Eagle Trans, Inc., (8027), and Eagle Fast Ways, Inc. (3935). The Debtors' respective corporate headquarters are: 180 State Street, Southlake, Texas 76092; 4435 East Chandler Blvd., Phoenix, Arizona 85048; and 525 Woodland Square Blvd., Conroe, Texas 77384.

[2] All capitalized terms used herein shall have the meaning attributed to them in section 8.1 of this Plan.

## ARTICLE 1:   PLAN SUMMARY

**1.1.** **Reorganization**:  The Plan provides for a reorganization and restructuring of the Debtors' financial obligations.

**1.2.** **Distribution**:  The Plan provides for a distribution to Creditors in accordance with the terms of the Plan from the Debtors over the course of **five (5)** years from the Debtors' continued business operations.

**1.3.** **Classes**:  The Plan provides for:

| | |
|---|---|
| **1** | Class of priority Claims; |
| **25** | Classes of secured Claims; |
| **1** | Class of unsecured Claims; and |
| **1** | Class of equity security holders. |

Unsecured Creditors holding Allowed Claims will receive distributions paid quarterly over five (5) years in the following approximate amounts:

| DEBTOR | PROJECTED QUARTERLY DISTRIBUTION |
|---|---|
| Eagle Trucklines, Inc. | $1,050 per quarter commencing the 19th month after the Effective Date. |
| Eagle Trans, Inc. | |
| Eagle Fast Ways, Inc. | |

This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 4 of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE 2:   CLASSIFICATION OF CLAIMS AND INTERESTS

| | | | |
|---|---|---|---|
| 2.1. | **Class 1A** | .............. | The claim of *Ad Valorem* Tax Authorities to the extent Allowed as Secured Claims under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.2. | **Class 1B** | .............. | The Claim of EverBank against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.3. | **Class 1C** | .............. | The Claim of GM against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.4. | **Class 1D** | .............. | The Claim of Mitsui (Contract No. 1) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.5. | **Class 1E** | .............. | The Claim of Mitsui (Contract No. 2) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |

| 2.6. | **Class 1F** | ............... | The Claim of Mitsubishi (Contract No. 1) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
|---|---|---|---|
| 2.7. | **Class 1G** | ............... | The Claim of Mitsubishi (Contract No. 2) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.8. | **Class 1H** | ............... | The Claim of PACCAR (Contract No. 1) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.9. | **Class 1I** | ............... | The Claim of PACCAR (Contract No. 2) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.10. | **Class 1J** | ............... | The Claim of PNC against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.11. | **Class 1K** | ............... | The Claim of BofA against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.12. | **Class 1L** | ............... | The Claim of USBank against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.13. | **Class 1M** | ............... | The Claim of CCG against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.14. | **Class 1N** | ............... | The Claim of Pawnee (Contract No. 1) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.15. | **Class 1O** | ............... | The Claim of Pawnee (Contract No. 2) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.16. | **Class 1P** | ............... | The Claim of Pawnee (Contract No. 3) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.17. | **Class 1Q** | ............... | The Claim of Pawnee (Contract No. 4) against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.18. | **Class 1R** | ............... | The Claim of Verdant against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.19. | **Class 1S** | ............... | The Claim of Crossroads against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.20. | **Class 1T** | ............... | The Claim of VFS against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.21. | **Class 1U** | ............... | The Claim of Huntington against Trucklines to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.22. | **Class 1V** | ............... | The Claim of BMO against Debtors to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.23. | **Class 1W** | ............... | The Claim of BBF against Trans to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.24. | **Class 1X** | ............... | The Claim of Mitsui against Trans to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |

| | | | |
|---|---|---|---|
| 2.25. | **Class 1Y** | ............... | The Claim of VFS against Trans to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.26. | **Class 1Z** | ............... | The Claim of PACCAR against Fast Ways to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.27. | **Class 1AA** | ............... | The Claim of Crossroads (Contract No. 1) against Fast Ways to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.28. | **Class 1BB** | ............... | The Claim of Crossroads (Contract No. 2) against Fast Ways to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.29. | **Class 2** | ............... | All Allowed Claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). |
| 2.30. | **Class 3A** | ............... | All non-priority unsecured Claims Allowed under § 502 of the Bankruptcy Code respecting Trucklines. |
| 2.31. | **Class 3B** | ............... | All non-priority unsecured Claims Allowed under § 502 of the Bankruptcy Code respecting Trans. |
| 2.32. | **Class 3C** | ............... | All non-priority unsecured Claims Allowed under § 502 of the Bankruptcy Code respecting Fastways. |
| 2.33. | **Class 4** | ............... | Equity Interests of the Debtors |

### ARTICLE 3:   TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIOIRTY TAX CLAIMS AND QUARTERLY AND COURT FEES

| | | |
|---|---|---|
| 3.1. | **Unclassified Claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.2. | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan by the Debtor, but only to the extent of each such Debtor's liability, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor as set forth in the following sections 3.3 through and including 3.4 or post-confirmation. **NOTE: This treatment is materially altered in the event of confirmation pursuant to § 1191(b) as to claims arising under §§ 507(a)(2) and (3) as noted in section 3.4 of this Plan.** |
| | | Estimation of Amount.  Debtors estimate the aggregate of all Allowed Administrative Expense Claims to be approximately $20,000.00; the claimants being DeMarco Mitchell, PLLC, and the SubV Trustee. |
| 3.3. | **Priority Tax Claims** | Each holder of an Allowed Priority Tax Claim against the Debtors shall receive on the Effective Date, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, at the election of the liable Debtor, either:  (i) Cash payment in the amount of such holder's Allowed Priority Tax Claim; (ii) deferred Cash payments over a period not to exceed five (5) years, from the Petition Date |

of a value as of the Effective Date, equal to the Allowed amount of such Claim; or (iii) such other terms as may be agreed upon by such holder and the liable Debtor. The rate of interest to be paid on Allowed Priority Tax Claims that are paid out over five (5) years shall be equal to the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S.C. § 6621(a)) as of the Effective Date (the underpayment rate is currently 8.0%). Each Reorganized Debtor shall be solely responsible for its own Allowed Priority Tax Claim.

| 3.4. | **EXCEPTION: Payment of Administrative Expense Claims Through Plan Term** | If the Plan is confirmed pursuant to § 1191(b) any and all claims of a kind specified in paragraph (2) or (3) of § 507(a) of the Bankruptcy Code shall be paid the Allowed amount of such claim in equal monthly installments during the Plan Term commencing on the Effective Date or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
|---|---|---|

## ARTICLE 4:   TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1 **Claims and Interests shall be treated as follows under this Plan**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1A - Secured Claim of *Ad Valorem* Tax Authorities | ☑ Impaired<br>☐ Unimpaired | Each holder of an Allowed Class 1A Claim payable to a taxing authority for *ad valorem* taxes shall retain its full rights and liens to the extent of its Allowed Secured Tax Claim until its Allowed Secured Tax Claim has been paid in full.<br><br>Payment shall be made in full no later than five (5) years from and after the Petition Date in equal monthly payments. More specifically, the prepetition and post-petition *ad valorem* taxes of the holder of an Allowed Class 1A Claim shall be treated as follows:<br><br>Liens and Interest. Any and all liens (both those arising prepetition and post-petition) held by the holder of an Allowed Class 1A Claim shall be preserved in any transfer of assets under the Plan. Each holder of an Allowed Class 1A Claim shall be entitled to receive interest from the Petition Date to the Effective Date pursuant to 11 U.S.C. § 506(b), as well as from the Effective Date until paid in full at a statutory rate of 1% per month as required by 11 U.S.C. § 511. If the post-petition *ad valorem* taxes are not paid prior to the State law delinquency date, each holder of an Allowed Class 1A Claim shall be entitled to receive any penalties and interest |

that accrue under State law based on the nonpayment of such tax.

Default.  In the event the Reorganized Debtor fails to timely pay an Allowed Class 1A Claim or a post-petition tax in compliance with the Plan, the Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1A Claim may pursue remedies in accordance with that section against the Reorganized Debtor.

Estimation of Amount.  Debtor estimates the aggregate of all Allowed Class 1A Claims is $0.00 based upon the Court's claim register.

| | | |
|---|---|---|
| Class 1B - Secured Claim of **EverBank** | ☑ Impaired<br>☐ Unimpaired | Class 1B Summary.  Class 1B consists of the Secured Claim of EverBank against Trucklines and is secured by two 2023 utility 53x102 refrigerated trailers, with VINs ending in 58537 and 58536, with attached Thermo King Model S600 refrigeration units, serial numbers 6001358271 and 6001358270.  Trucklines estimates the principal balance due and owing EverBank as a Class 1B Claim holder is **$160,021.73**.  The Allowed Class 1B Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br>Principal Amount.  The unpaid principal balance of the Allowed Class 1B Claim is hereby allowed as an Allowed Secured Claim in the amount of **$160,021.73**.<br><br>Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1B Claim holder at the rate of **6.1%** per annum from and after the Confirmation Date.<br><br>Payments.  The Allowed Class 1B Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$2,345.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1B Claim is paid in full. |

<u>Maturity</u>.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1B Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1B Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1B Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1B Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1B Claim shall be sent to the following address: **EverBank N.A.,** P.O. Box 1608, Denver, CO 80291.

| Class 1C - Secured Claim of **GM** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1C Summary</u>.  Class 1C consists of the Secured Claim of GM against Trucklines, and is secured by a 2022 GMC Yukon, Vehicle Identification Number 1GKS2DKL8NR103580.  Trucklines estimates the principal balance due and owing GM as a Class 1C Claim holder is **$80,518.87**.  The Allowed Class 1C Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br><u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1C Claim is hereby allowed as an Allowed Secured Claim in the amount of **$80,518.87**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1C |

Claim holder at the rate of **4.0%** per annum from and after the Confirmation Date.

Payments. The Allowed Class 1C Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$1,483.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1C Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1C Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1C Claim shall remain in full force and effect following the Effective Date.

Default. In the event Reorganized Trucklines fails to timely pay an Allowed Class 1C Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1C Claim may pursue remedies in accordance with that section.

Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1C Claim shall be sent to the following address: **AmeriCredit Financial Services, Inc. d/b/a GM Financial, c/o Wilcox Law, PLLC, P.O. Box 201849, Arlington, TX 76006**.

| | | |
|---|---|---|
| Class 1D - Secured Claim of **Mitsui** (Contract No. 1) | ☑ Impaired<br>☐ Unimpaired | Class 1D Summary. Class 1D consists of the Secured Claim of Mitsui (Contract No. 1) against Trucklines, and is secured by a 2023 Kenworth T680 Tractor, VIN 1XKYD49X3PJ231983. |

Trucklines estimates the principal balance due and owing Mitsui (Contract No. 1) as a Class 1D Claim holder is **$179,088.57**. The Allowed Class 1D Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.

Principal Amount. The unpaid principal balance of the Allowed Class 1D Claim is hereby allowed as an Allowed Secured Claim in the amount of **$179,088.57**.

Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1D Claim holder at the rate of **7.59%** Per annum from and after the Confirmation Date.

Payments. The Allowed Class 1D Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$2,756.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1D Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1D Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1D Claim shall remain in full force and effect following the Effective Date.

Default. In the event Reorganized Trucklines fails to timely pay an Allowed Class 1D Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1D Claim may

pursue remedies in accordance with that section.

Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1D Claim shall be sent to the following address: **Sumitomo Mitsui Finance and Leasing Co. Ltd., c/o Kye Law Group, P.C., 201 Old Country Road, Suite 120, Melville, NY 11747**.

| Class 1E - Secured Claim of **Mitsui** (Contract No. 2) | ☑ Impaired<br>☐ Unimpaired | Class 1E Summary. Class 1E consists of the Secured Claim of Mitsui (Contract No. 2) against Trucklines, and is secured by a 2023 Utility VS2RA Reefer Trailer, VIN 1UYVS2539P2989401 and a 2023 Utility VS2RA Reefer Trailer, VIN 1UYVS2534P2989404. Trucklines estimates the principal balance due and owing Mitsui (Contract No. 2) as a Class 1E Claim holder is **$212,401.19**. The Allowed Class 1E Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1E Claim is hereby allowed as an Allowed Secured Claim in the amount of **$212,401.19**.<br><br>Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1E Claim holder at the rate of **8.69%** Per annum from and after the Confirmation Date.<br><br>Payments. The Allowed Class 1E Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$3,384.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1E Claim is paid in full.<br><br>Maturity. The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.<br><br>Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed |

Class 1E Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1E Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1E Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1E Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1E Claim shall be sent to the following address: **Sumitomo Mitsui Finance and Leasing Co. Ltd., c/o Kye Law Group, P.C., 201 Old Country Road, Suite 120, Melville, NY 11747**.

| Class 1F – Secured Claim of **Mitsubishi (Contract No. 1)** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1F Summary</u>.  Class 1F consists of the Secured Claim of Mitsubishi (Contract No. 1) against Trucklines, and is secured by:<br>  a) 2021 Great Dane Reefer, VIN 1GR1A0629MW228307<br>  b) 2021 Great Dane Reefer, VIN #1GR1A0628MW228329, and<br>  c) 2021 Great Dane Reefer, VIN #1GR1A0624MW228330.<br>Trucklines estimates the principal balance due and owing Mitsubishi (Contract No. 1) as a Class 1F Claim holder is **$127,830.07**.  The Allowed Class 1F Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1F Claim is hereby allowed as an Allowed Secured Claim in the amount of **$127,830.07**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1F |

Claim holder at the rate of **9.92%** Per annum from and after the Confirmation Date.

<u>Payments</u>.  The Allowed Class 1F Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$2,117.00**  commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1F Claim is paid in full.

<u>Maturity</u>.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1F Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1F Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1F Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1F Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1F Claim shall be sent to the following address: **Mitsubishi HC Capital America, Inc., c/o Kemp Smith, LLP, 221 North Kansas, Suite 1700, El Paso, TX 79901**.

| Class 1G – Secured Claim of **Mitsubishi (Contract No. 2)** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1G Summary</u>.  Class 1G consists of the Secured Claim of Mitsubishi (Contract No. 2) against Trucklines, and is secured by: |
| --- | --- | --- |

a) 2023 Utility Refrigerated Trailer, Serial Number 1UYVS2533P2910224 with Thermo King Unit Serial Number 6001362087, and

b) 2023 Utility Refrigerated Trailer, Serial Number 1UYVS2535P2910225 with Thermo King Unit Serial Number 6001362318.

Trucklines estimates the principal balance due and owing Mitsubishi (Contract No. 2) as a Class 1G Claim holder is **$208,033.30**. The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.

Principal Amount. The unpaid principal balance of the Allowed Class 1G Claim is hereby allowed as an Allowed Secured Claim in the amount of **$208,033.30**.

Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1G Claim holder at the rate of **7.40%** Per annum from and after the Confirmation Date.

Payments. The Allowed Class 1G Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$3,181.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1G Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the 84**th** month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1G Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing

the Allowed Class 1G Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>. In the event Reorganized Trucklines fails to timely pay an Allowed Class 1G Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1G Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>. Until further notice, all payments due the holder of an Allowed Class 1G Claim shall be sent to the following address: **Mitsubishi HC Capital America, Inc., c/o Kemp Smith, LLP, 221 North Kansas, Suite 1700, El Paso, TX 79901**.

| Class 1H – Secured Claim of **PACCAR** (Contract No. 1) | ☐ Impaired ☑ Unimpaired | <u>Class 1H Summary</u>. Class 1H consists of the Secured Claim of PACCAR (Contract No. 1) against Trucklines, and is secured by a 2023 Kenworth T680 VIN-1XKYD49X0PJ247719. Trucklines estimates the principal balance due and owing PACCAR (Contract No. 1) as a Class 1H Claim holder is **$174,039.13**. The Allowed Class 1H Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br><u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1H Claim is hereby allowed as an Allowed Secured Claim in the amount of **$174,039.13**.<br><br><u>Interest</u>. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1H Claim holder at the rate of **7.40%** Per annum from and after the Confirmation Date.<br><br><u>Payments</u>. The Allowed Class 1H Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$2,669.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1H Claim is paid in full. |

<u>Maturity</u>. The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>. At any time after the Effective Date, without penalty or premium, the Allowed Class 1H Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

<u>Collateral</u>. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1H Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>. In the event Reorganized Trucklines fails to timely pay an Allowed Class 1H Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1H Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>. Until further notice, all payments due the holder of an Allowed Class 1H Claim shall be sent to the following address: **PACCAR Financial Group c/o Linda Markle, BK Specialist, P.O. Box 1518, Bellevue, WA 98009**.

| Class 1I – Secured Claim of **PACCAR (Contract No. 2)** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1I Summary</u>. Class 1I consists of the Secured Claim of PACCAR (Contract No. 2) against Trucklines, and is secured by a 2023 Kenworth T680 VIN-1XKYD49X9PJ247718. Trucklines estimates the principal balance due and owing PACCAR (Contract No. 2) as a Class 1I Claim holder is **$170,177.86**. The Allowed Class 1I Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br><u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1I Claim is hereby allowed as an Allowed Secured Claim in the amount of **$170,177.86**.<br><br><u>Interest</u>. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1I |

Claim holder at the rate of **7.40%** Per annum from and after the Confirmation Date.

Payments.  The Allowed Class 1I Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$2,609.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1I Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1I Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1I Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1I Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1I Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1I Claim shall be sent to the following address: **PACCAR Financial Group c/o Linda Markle, BK Specialist, P.O. Box 1518, Bellevue, WA 98009**.

| Class 1J – Secured Claim of **PNC** | ☐ Impaired<br>☑ Unimpaired | Class 1J Summary.  Class 1J consists of the Secured Claim of PNC against Trucklines, and is secured by:<br>  a) 2023 Kenworth T680, VIN-1XKYD49X9PJ239781 |
|---|---|---|

b) 2022 Thermo King TriPac Evolution APU, HTG134960818.

Trucklines estimates the principal balance due and owing PNC as a Class 1J Claim holder is **$225,783.94**. The Allowed Class 1I Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.

Principal Amount. The unpaid principal balance of the Allowed Class 1I Claim is hereby allowed as an Allowed Secured Claim in the amount of **$225,783.94**.

Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1I Claim holder at the rate of **9.85%** Per annum from and after the Confirmation Date.

Payments. The Allowed Class 1I Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$3,731.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1I Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the 84**th** month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1I Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1I Claim shall remain in full force and effect following the Effective Date.

Default. In the event Reorganized Trucklines fails to timely pay an Allowed Class 1I Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder

of the affected Allowed Class 1I Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1J Claim shall be sent to the following address: **PNC Bank, National Association, successor to PNC Equipment Finance, LLC, c/o Michael McGinley - VP Litigation and Recovery, 655 Business Center Drive, Horsham, PA 19044**.

| | | |
|---|---|---|
| Class 1K – Secured Claim of **BofA** | ☐ Impaired<br>☑ Unimpaired | Class 1K Summary.  Class 1K consists of the Secured Claim of BofA against Trucklines, and is secured by:<br>    a) 2023 Utility 53x102 Refrigerated Trailer, VIN-1UYVS2538P2911<br>    b) Thermo King Refrigeration Unit, 600136340.<br>Trucklines estimates the principal balance due and owing BofA as a Class 1K Claim holder is **$119,410.87**.  The Allowed Class 1K Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br>Principal Amount.  The unpaid principal balance of the Allowed Class 1K Claim is hereby allowed as an Allowed Secured Claim in the amount of **$119,410.87**.<br><br>Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1K Claim holder at the rate of **9.25%** Per annum from and after the Confirmation Date.<br><br>Payments.  The Allowed Class 1K Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$1,779.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1K Claim is paid in full.<br><br>Maturity.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at |

which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1K Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1K Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1K Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1K Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1K Claim shall be sent to the following address: **Banc of America Leasing & Capital, LLC, M19-030-02-05, 3030 Cross Creek Pkwy., Auburn Hills, MI 48326**.

| Class 1L – Secured Claim of **USBank** | ☐ Impaired<br>☑ Unimpaired | Class 1K Summary.  Class 1K consists of the Secured Claim of USBank against Trucklines, and is secured by a 2023 Utility 53 X 102 Refrigerated Trailer ThermoKing-Refrigeration Unit. Trucklines estimates the principal balance due and owing USBank as a Class 1L Claim holder is **$237,639.28**.  The Allowed Class 1L Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br>Principal Amount.  The unpaid principal balance of the Allowed Class 1L Claim is hereby allowed as an Allowed Secured Claim in the amount of **$237,639.28**.<br><br>Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1L Claim holder at the rate of **5.00%** Per annum from and after the Confirmation Date. |

<u>Payments</u>.  The Allowed Class 1L Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$3,359.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1L Claim is paid in full.

<u>Maturity</u>.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1L Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1L Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1L Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1L Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1L Claim shall be sent to the following address: **U.S. Bank Equipment Finance, P.O. Box 54238, St. Louis, MO 63195.**

| Class 1M – Secured Claim of **CCG** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1M Summary</u>.  Class 1M consists of the Secured Claim of CCG against Trucklines, and is secured by:<br><br>   a) 2021 Volvo VNL64T sleeper truck, VIN-4V4NC9EJ5MN282863; and |

b) 2021 Volvo VNL64T sleeper truck, VIN-4V4NC9EJ5MN282864.

Trucklines estimates the principal balance due and owing CCG as a Class 1M Claim holder is **$180,459.69**. The Allowed Class 1M Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.

<u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1M Claim is hereby allowed as an Allowed Secured Claim in the amount of **$180,459.69**.

<u>Interest</u>. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1M Claim holder at the rate of **0.00%** Per annum from and after the Confirmation Date.

<u>Payments</u>. The Allowed Class 1M Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$2,149.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1M Claim is paid in full.

<u>Maturity</u>. The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>. At any time after the Effective Date, without penalty or premium, the Allowed Class 1M Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

<u>Collateral</u>. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1M Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>. In the event Reorganized Trucklines fails to timely pay an Allowed Class 1M Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder

| | | |
|---|---|---|
| | | of the affected Allowed Class 1M Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1M Claim shall be sent to the following address: **Commercial Credit Group, Inc., c/o Herb Orengo, 2135 City Gate Lane, Suite 440, Naperville, IL 60563.** |
| Class 1N – Secured Claim of **Pawnee (Contract No. 1)** | ☐ Impaired ☑ Unimpaired | Class 1N Summary.  Class 1N consists of the Secured Claim of Pawnee (Contract No. 1) against Trucklines, and is secured by a 2021 VOLVO VNL64T-860, VIN-4V4NC9EJEMN282862. Trucklines estimates the principal balance due and owing Pawnee (Contract No. 1) as a Class 1N Claim holder is **$116,664.41**.  The Allowed Class 1N Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.

Principal Amount.  The unpaid principal balance of the Allowed Class 1N Claim is hereby allowed as an Allowed Secured Claim in the amount of **$116,664.41**.

Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1N Claim holder at the rate of **11.50%** Per annum from and after the Confirmation Date.

Payments.  The Allowed Class 1N Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$2,029.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1N Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed |

<table>
<tr><td></td><td></td><td>

Class 1N Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1N Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1N Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1N Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1N Claim shall be sent to the following address: **Pawnee Leasing Corporation, c/o Kenny Fitzgerald, 3801 Automation Way, Fort Collins, CO 80525.**

</td></tr>
</table>

| | | |
|---|---|---|
| Class 1O – Secured Claim of **Pawnee (Contract No. 2)** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1O Summary</u>.  Class 1O consists of the Secured Claim of Pawnee (Contract No. 2) against Trucklines, and is secured by a ThermoKing Tripac Evolution APU Unit. Trucklines estimates the principal balance due and owing Pawnee (Contract No. 2) as a Class 1O Claim holder is **$8,371.39**.  The Allowed Class 1O Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1O Claim is hereby allowed as an Allowed Secured Claim in the amount of **$8,371.39**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1O Claim holder at the rate of **11.50%** Per annum from and after the Confirmation Date.<br><br><u>Payments</u>.  The Allowed Class 1O Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments |

of **$742.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1O Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 12th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1O Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1O Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1O Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1O Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1O Claim shall be sent to the following address: **Pawnee Leasing Corporation, c/o Kenny Fitzgerald, 3801 Automation Way, Fort Collins, CO 80525.**

| Class 1P – Secured Claim of **Pawnee (Contract No. 3)** | ☐ Impaired ☑ Unimpaired | Class 1P Summary.  Class 1P consists of the Secured Claim of Pawnee (Contract No. 3) against Trucklines, and is secured by 4 Tripac EVO APU UNITS. Trucklines estimates the principal balance due and owing Pawnee (Contract No. 3) as a Class 1P Claim holder is **$17,009.80**.  The Allowed Class 1P Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows. |
|---|---|---|

Principal Amount.  The unpaid principal balance of the Allowed Class 1P Claim is hereby allowed as an Allowed Secured Claim in the amount of **$17,009.80**.

Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1P Claim holder at the rate of **8.50%** Per annum from and after the Confirmation Date.

Payments.  The Allowed Class 1P Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$773.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1P Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 24th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1P Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1P Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1P Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1P Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1P Claim shall be sent to the following address: **Pawnee Leasing Corporation, c/o Kenny**

**Fitzgerald, 3801 Automation Way, Fort Collins, CO 80525.**

| | | |
|---|---|---|
| Class 1Q – Secured Claim of **Pawnee (Contract No. 4)** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1Q Summary</u>. Class 1Q consists of the Secured Claim of Pawnee (Contract No. 4) against Trucklines, and is secured by 2 Tripac EVO APU UNITS. Trucklines estimates the principal balance due and owing Pawnee (Contract No. 4) as a Class 1Q Claim holder is **$10,559.71**. The Allowed Class 1Q Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br><u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1Q Claim is hereby allowed as an Allowed Secured Claim in the amount of **$10,559.71**.<br><br><u>Interest</u>. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1Q Claim holder at the rate of **8.50%** Per annum from and after the Confirmation Date.<br><br><u>Payments</u>. The Allowed Class 1Q Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$480.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1Q Claim is paid in full.<br><br><u>Maturity</u>. The maturity date shall be the first (1st) day of the 24**th** month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.<br><br><u>Pre-Payment</u>. At any time after the Effective Date, without penalty or premium, the Allowed Class 1Q Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.<br><br><u>Collateral</u>. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1Q Claim shall remain in full force and effect following the Effective Date. |

<u>Default</u>.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1Q Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1Q Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1Q Claim shall be sent to the following address: **Pawnee Leasing Corporation, c/o Kenny Fitzgerald, 3801 Automation Way, Fort Collins, CO 80525.**

| Class 1R – Secured Claim of **Verdant** | ☐ Impaired ☑ Unimpaired | <u>Class 1R Summary</u>.  Class 1R consists of the Secured Claim of Verdant against Trucklines, and is secured by a 2023 Kenworth, VIN-1XKYD49X1PJ231982. Trucklines estimates the principal balance due and owing Verdant as a Class 1R Claim holder is **$198,863.86**.  The Allowed Class 1R Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1R Claim is hereby allowed as an Allowed Secured Claim in the amount of **$198,863.86**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1R Claim holder at the rate of **7.59%** Per annum from and after the Confirmation Date.<br><br><u>Payments</u>.  The Allowed Class 1R Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$3,059.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1R Claim is paid in full.<br><br><u>Maturity</u>.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at |

which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1R Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1R Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Trucklines fails to timely pay an Allowed Class 1R Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1R Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1R Claim shall be sent to the following address: **Verdant Commercial Capital, LLC, P.O. Box 207202, Dallas, TX 75320.**

| Class 1S – Secured Claim of **Crossroads** | ☐ Impaired ☑ Unimpaired | <u>Class 1S Summary</u>.  Class 1S consists of the Secured Claim of Crossroads against Trucklines, and is secured by a 2021 Volvo VIN-4V4NC9EJXMN282860.  Trucklines estimates the principal balance due and owing Crossroads as a Class 1S Claim holder is **$81,497.39**.  The Allowed Class 1S Claim shall be modified as set forth herein and paid by Reorganized Trucklines as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1S Claim is hereby allowed as an Allowed Secured Claim in the amount of **$81,497.39**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1S Claim holder at the rate of **9.98%** Per annum from and after the Confirmation Date. |

Payments. The Allowed Class 1S Claim, plus interest thereon, shall be paid by Reorganized Trucklines in consecutive monthly installments of **$1,352.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1S Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1S Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trucklines.

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1S Claim shall remain in full force and effect following the Effective Date.

Default. In the event Reorganized Trucklines fails to timely pay an Allowed Class 1S Claim Reorganized Trucklines shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1S Claim may pursue remedies in accordance with that section.

Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1S Claim shall be sent to the following address: **Crossroads Equipment Lease & Finance, LLC, P.O. Box 101285, Dallas, TX 75320.**

| Class 1T – Secured Claim of **VFS** | ☐ Impaired<br>☑ Unimpaired | Class 1T Summary. Class 1T consists of the Secured Claim of VFS against Trucklines and is secured by:<br>a) 2021 Volvo VNL64T-760 Truck Tractor, VIN-4V4NC9EH8MN237994; and<br>b) 2021 Volvo VNL64T-760 Truck Tractor, VIN-4V4NC9EJ3MN249084. |

Trucklines estimates the principal balance due and owing VFS as a Class 1T Claim holder is **$118,816.78**. The Allowed Class 1T Claim shall be modified as set forth herein and paid by Reorganized Trans as follows.

Principal Amount. The unpaid principal balance of the Allowed Class 1T Claim is hereby allowed as an Allowed Secured Claim in the amount of **$118,816.78**.

Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1T Claim holder at the rate of **8.50%** Per annum from and after the Confirmation Date.

Payments. The Allowed Class 1T Claim, plus interest thereon, shall be paid by Reorganized Trans in consecutive monthly installments of **$1,884.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1T Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1T Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trans.

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1T Claim shall remain in full force and effect following the Effective Date.

Default. In the event Reorganized Trans fails to timely pay an Allowed Class 1T Claim Reorganized Trans shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1T Claim may

pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1T Claim shall be sent to the following address: **VFS US, LLC, P.O. Box 26131, Greensboro, NC 27402.**

| Class 1U – Secured Claim of **Huntington** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1U Summary</u>.  Class 1U consists of the Secured Claim of Huntington against Trucklines and is secured by a 2023 Kenworth T680 VIN-1XKYD49X2PJ247589.  Trucklines estimates the principal balance due and owing Huntington as a Class 1U Claim holder is **$177,624.78**.  The Allowed Class 1U Claim shall be modified as set forth herein and paid by Reorganized Trans as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1U Claim is hereby allowed as an Allowed Secured Claim in the amount of **$177,624.78**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1U Claim holder at the rate of **6.59%** Per annum from and after the Confirmation Date.<br><br><u>Payments</u>.  The Allowed Class 1U Claim, plus interest thereon, shall be paid by Reorganized Trans in consecutive monthly installments of **$2,646.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1U Claim is paid in full.<br><br><u>Maturity</u>.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.<br><br><u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1U Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trans. |
| --- | --- | --- |

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1U Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Trans fails to timely pay an Allowed Class 1U Claim Reorganized Trans shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1U Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1U Claim shall be sent to the following address: **Huntington National Bank, 11100 Wayzata Blvd. Suite 700, Minnetonka, MN 55305.**

| | | |
|---|---|---|
| Class 1V – Secured Claim of **BMO** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1V Summary</u>.  Class 1V consists of the Secured Claim of BMO against Debtors, and is secured by<br><br>As to Trucklines:  two 2023 Utility Trailers bearing serial numbers 1UYVS2538P2658406 and 1UYVS253XP2658407.<br><br>As to Fast Ways:  five 2023 Utility Trailers bearing serial numbers 3UTVS2533P8863350, 3UTVS2531P8863346, 3UTVS2533P8863347, 3UTVS2535P8863348, & 3UTVS2537P8863349.<br><br>As to Trans:  five 2023 Utility Trailers bearing serial numbers 1UYVS2531P2658604, 1UYVS2533P2658605, 1UYVS2536P2658601, 1UYVS2538P2658602, & 1UYVS253XP2658603.<br><br>Debtors estimate the principal balance due and owing BMO as a Class 1V Claim holder is **$1,049,395.90**.  The Allowed Class 1V Claim shall be modified as set forth herein and paid by Reorganized Debtors as follows.<br><br><u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1V Claim is hereby allowed as an Allowed Secured Claim in the amount of **$1,049,395.90**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1V |

Claim holder at the rate of **9.50%** Per annum from and after the Confirmation Date.

Payments.  The Allowed Class 1V Claim, plus interest thereon, shall be paid by Reorganized Debtors in consecutive monthly installments of **$17,151.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1V Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 84**th** month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1V Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtors.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1V Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Debtors fails to timely pay an Allowed Class 1V Claim Reorganized Debtors shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1V Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1V Claim shall be sent to the following address: **BMO Bank N.A., P.O. Box 71951, Chicago, IL 60694.**

| Class 1W – Secured Claim of **BBF** | ☐ Impaired<br>☑ Unimpaired | Class 1W Summary.  Class 1W consists of the Secured Claim of BBF against Trans and is secured by a 2021 Volvo VNL64T-860 VIN# 4V4NC9EJ9MN282865.  Trans estimates the principal balance due and owing BBF as a Class |

1W Claim holder is **$76,988.74**. The Allowed Class 1W Claim shall be modified as set forth herein and paid by Reorganized Trans as follows.

Principal Amount. The unpaid principal balance of the Allowed Class 1W Claim is hereby allowed as an Allowed Secured Claim in the amount of **$76,988.74**.

Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1W Claim holder at the rate of **9.10%** Per annum from and after the Confirmation Date.

Payments. The Allowed Class 1W Claim, plus interest thereon, shall be paid by Reorganized Trans in consecutive monthly installments of **$1,243.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1W Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1W Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trans.

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1W Claim shall remain in full force and effect following the Effective Date.

Default. In the event Reorganized Trans fails to timely pay an Allowed Class 1W Claim Reorganized Trans shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1W Claim may pursue remedies in accordance with that section.

Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1W Claim shall be sent to the following address: **Blue Bridge Financial, Inc., 11921 Freedom Drive, Suite 1130, Reston, VA 20190-1192.**

| | | |
|---|---|---|
| Class 1X – Secured Claim of **Mitsui** | ☐ Impaired<br>☑ Unimpaired | **Class 1X Summary.** Class 1X consists of the Secured Claim of Mitsui against Trans and is secured by:<br><br>a) 2022 Volvo VNL64T-860 Truck Tractor w/ Tk Apu Unit, VIN-4V4NC9EJONN298776 and s/n- HTG1299785; and<br><br>b) 2022 Volvo VNL64T-860 Truck Tractor w/ Tk Apu Unit, VIN-4V4NC9FJ9NN298775 and s/n- HTG1293953.<br><br>Trans estimates the principal balance due and owing Mitsui as a Class 1X Claim holder is **$261,152.08**. The Allowed Class 1X Claim shall be modified as set forth herein and paid by Reorganized Trans as follows.<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1X Claim is hereby allowed as an Allowed Secured Claim in the amount of **$261,152.08**.<br><br>Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1X Claim holder at the rate of **7.74%** Per annum from and after the Confirmation Date.<br><br>Payments. The Allowed Class 1X Claim, plus interest thereon, shall be paid by Reorganized Trans in consecutive monthly installments of **$4,036.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1X Claim is paid in full.<br><br>Maturity. The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.<br><br>Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1X Claim may be prepaid, in whole or in |

part, in the sole discretion of Reorganized Trans.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1X Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Trans fails to timely pay an Allowed Class 1X Claim Reorganized Trans shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1X Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1X Claim shall be sent to the following address: **Sumitomo Mitsui Finance and Leasing Co. Ltd., c/o Kye Law Group, P.C., 201 Old Country Road, Suite 120, Melville, NY 11747.**

| Class 1Y – Secured Claim of **VFS** | ☐ Impaired<br>☑ Unimpaired | Class 1Y Summary.  Class 1Y consists of the Secured Claim of VFS against Trans and is secured by:<br>  a)  2022 Volvo VNL64T-860 Truck Tractor, VIN-4V4NC9EJ5NN298772; and<br>  b)  2022 Volvo VNL64T-860 Truck Tractor, VIN-4V4NC9EJ5NN298774.<br>Trans estimates the principal balance due and owing VFS as a Class 1Y Claim holder is **$278,054.05**.  The Allowed Class 1Y Claim shall be modified as set forth herein and paid by Reorganized Trans as follows.<br><br>Principal Amount.  The unpaid principal balance of the Allowed Class 1Y Claim is hereby allowed as an Allowed Secured Claim in the amount of **$278,054.05**.<br><br>Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1Y Claim holder at the rate of **8.04%** Per annum from and after the Confirmation Date.<br><br>Payments.  The Allowed Class 1Y Claim, plus interest thereon, shall be paid by Reorganized |

Trans in consecutive monthly installments of **$4,339.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1Y Claim is paid in full.

<u>Maturity</u>.  The maturity date shall be the first (1st) day of the 84**th** month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1Y Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Trans.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1Y Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Trans fails to timely pay an Allowed Class 1Y Claim Reorganized Trans shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1Y Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1Y Claim shall be sent to the following address: **VFS US, LLC, P.O. Box 26131, Greensboro, NC 27402.**

| | | |
|---|---|---|
| Class 1Z – Secured Claim of **PACCAR** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1Z Summary</u>.  Class 1Z consists of the Secured Claim of PACCAR against Fast Ways and is secured by:<br>a)  2023 Kenworth T680 with new 2022 Thermo King Tri-Pac Evolution APU Serial No. HTG131701, VIN-1XKYD49X8PJ231980;<br>b) 2023 Kenworth T680 with new 2022 Thermo King Tri-Pac Evolution APU Serial No. HTG131703, VIN-1XKYD49XXPJ231981; and |

c) 2023 Kenworth T680 with 2022 Thermo King APU Serial No. HTG1334486, VIN-1XKYD49X8PJ239724.

Fast Ways estimates the principal balance due and owing PACCAR as a Class 1Z Claim holder is **$562,303.47**. The Allowed Class 1Z Claim shall be modified as set forth herein and paid by Reorganized Fast Ways as follows.

Principal Amount. The unpaid principal balance of the Allowed Class 1Z Claim is hereby allowed as an Allowed Secured Claim in the amount of **$562,303.47**.

Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1Z Claim holder at the rate of **8.95%** Per annum from and after the Confirmation Date.

Payments. The Allowed Class 1Z Claim, plus interest thereon, shall be paid by Reorganized Fast Ways in consecutive monthly installments of **$9,302.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1Z Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1Z Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Fast Ways.

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1Z Claim shall remain in full force and effect following the Effective Date.

Default. In the event Reorganized Fast Ways fails to timely pay an Allowed Class 1Z Claim Reorganized Fast Ways shall be in default, and,

subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1Z Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1Z Claim shall be sent to the following address: **PACCAR Financial Group c/o Linda Markle, BK Specialist, P.O. Box 1518, Bellevue, WA 98009.**

| Class 1AA – Secured Claim of **Crossroads (Contract No. 1)** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1AA Summary</u>.  Class 1AA consists of the Secured Claim of Crossroads (Contract No. 1) against Fast Ways and is secured by a 2023 Kenworth T680 VIN-1XKYD49X3PJ239727. Fast Ways estimates the principal balance due and owing Crossroads (Contract No. 1) as a Class 1AA Claim holder is **$185,053.00**.  The Allowed Class 1AA Claim shall be modified as set forth herein and paid by Reorganized Fast Ways as follows. |
| --- | --- | --- |

<u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1AA Claim is hereby allowed as an Allowed Secured Claim in the amount of **$185,053.00**.

<u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1AA Claim holder at the rate of **8.99%** Per annum from and after the Confirmation Date.

<u>Payments</u>.  The Allowed Class 1AA Claim, plus interest thereon, shall be paid by Reorganized Fast Ways in consecutive monthly installments of **$2,976.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1AA Claim is paid in full.

<u>Maturity</u>.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed

Class 1AA Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Fast Ways.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1AA Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Fast Ways fails to timely pay an Allowed Class 1AA Claim Reorganized Fast Ways shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1AA Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1AA Claim shall be sent to the following address:  **Crossroads Equipment Lease & Finance, LLC, P.O. Box 101285, Dallas, TX 75320.**

| Class 1BB – Secured Claim of **Crossroads (Contract No. 2)** | ☐ Impaired<br>☑ Unimpaired | <u>Class 1BB Summary</u>.  Class 1BB consists of the Secured Claim of Crossroads (Contract No. 2) against Fast Ways and is secured by:<br>　a) 2023 Kenworth T680 with new 2022 Thermo King Tri-Pac Evolution APU Serial No. HTGl337692, VIN-lXKYD49X9PJ239778;<br>　b) 2023 Kenworth T680 with new 2022 Thermo King Tri-Pac Evolution APU Serial; and No. HTGI337694, VIN-lXKYD49XOPJ239779.<br>Fast Ways estimates the principal balance due and owing Crossroads (Contract No. 2) as a Class 1BB Claim holder is **$418,111.88**.  The Allowed Class 1BB Claim shall be modified as set forth herein and paid by Reorganized Fast Ways as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1BB Claim is hereby allowed as an Allowed Secured Claim in the amount of **$418,111.88**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1BB |
|---|---|---|

Claim holder at the rate of **9.77%** Per annum from and after the Confirmation Date.

Payments.  The Allowed Class 1BB Claim, plus interest thereon, shall be paid by Reorganized Fast Ways in consecutive monthly installments of **$6,891.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1BB Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 84th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1BB Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Fast Ways.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1BB Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Fast Ways fails to timely pay an Allowed Class 1BB Claim Reorganized Fast Ways shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1BB Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1BB Claim shall be sent to the following address:  **Crossroads Equipment Lease & Finance, LLC, P.O. Box 101285, Dallas, TX 75320.**

| | | |
|---|---|---|
| Class 2 - Priority Claims excluding those in Article 3 of this Plan | ☐ Impaired<br>☑ Unimpaired | Class 2 consists of all Allowed Priority Claims against the Debtor.  Except to the extent that the holder of such Claim agrees to a different treatment, the Reorganized Debtor shall pay |

| | | |
|---|---|---|
| | | Cash on the Effective Date to each holder of any Allowed Claim in Class 2 the amount of such Allowed Claim against such Reorganized Debtor. |
| Class 3 – Non-priority unsecured Claims | ☑ Impaired<br>☐ Unimpaired | Class 3 consists of Allowed Claims against Debtors (including Claims arising from the rejection of executory contracts and/or unexpired leases) other than: (i) Administrative Claims; (ii) Priority Tax Claims; or (iii) Claims included within any other Class designated in this Plan.  Class 3A shall be deemed to include those Creditor(s) holding an alleged Secured Claim against Trucklines, for which: (y) no collateral exists to secure the alleged Secured Claim; and/or (z) liens, security interests, or other encumbrances that are senior in priority to the alleged Secured Claim exceed the fair market value of the collateral securing such alleged Secured Claims as of the Petition Date.<br><br>Quarterly Payments. Each holder of an Allowed Unsecured Claim in Class 3 shall be paid by Reorganized Debtors from an Unsecured Creditor Pool, which pool shall be funded at the rate of **$8,334.00** per month commencing April 1, 2025, and continuing on the same day each month until the obligations set forth herein are satisfied. The holders of Allowed Class 3 Claims shall be paid quarterly from the Unsecured Creditor Pool **for a period not to exceed four (4) years (16 quarterly payments)**. The first quarterly payment will be made on or before June 20, 2025, and continue on the same day each quarter thereafter until the Allowed Class 3 Claim is paid in full.<br><br>**NOTE**:  Each Debtor shall only be obligated to fund the Unsecured Creditor Pool in an amount equal to the *pro rata* portion of its obligations to the holders of Allowed Unsecured Class 3 Claims.<br><br>**Estimation of Amount**.  Debtors estimate the aggregate of all Allowed Unsecured Claims against the Debtors to be approximately $400,000.00, excluding the claims of any |

|  | | insiders, which insider claims are estimated to be approximately $1.1 million. |
| Class 4 – Equity Security Holders of the Debtor | ☐ Impaired<br>☑ Unimpaired | Class 4 consists of the holders of Allowed Interests in the Debtors. The holder of an Allowed Class 4 Interest shall retain their interests in the Reorganized Debtors. |

## ARTICLE 5:   ALLOWANCE AND DISALLOWANCE OF CLAIMS

| 5.1. | **Disputed Claim** | A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br><br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br><br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.2. | **Delay of distribution on a disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order. |
| 5.3. | **Settlement of disputed Claims** | The Reorganized Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure |

## ARTICLE 6:   EXECUTORY CONTRACTS

| 6.1. | **Assumed executory contracts and unexpired leases** | (a) Reorganized Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date:<br><br>• n/a<br><br>(b) Reorganized Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.1(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **ninety (90)** days after the Effective Date. |

## ARTICLE 7:   MEANS FOR IMPLEMENTATION OF THE PLAN

| 7.1. | **General** | The Debtor proposes to implement and consummate this Plan through the means contemplated by §§ 1123 and 1145(a) of the Bankruptcy Code. |
| --- | --- | --- |
| 7.2. | **Reorganized Debtor and Performance of Assumed Executory Contracts** | From and after the Effective Date, in accordance with the terms of this Plan and the Confirmation Order, the Reorganized Debtor shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with Article 6 of this Plan. |
| 7.3. | **Reorganized Debtor and Estate assets** | 7.3.1.  **Management of Reorganized Debtor**.   The management of Reorganized Debtor will remain unaltered. |
| | | 7.3.2.  **Revesting [§ 1191(a)]**.  On the Effective Date, if the Plan is confirmed pursuant to § 1191(a), title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall vest and/or revest in the Reorganized Debtor.  Thereafter, each Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan.  From and after the Effective Date, except as otherwise described in this Plan, each Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein. |
| | | 7.3.3.  **No Revesting [§ 1191(b)]**.  If the Plan is confirmed pursuant to § 1191(b), title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall remain property of the Estate until discharge of the Reorganized Debtor pursuant to § 1192.  From and after the Discharge Date title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall vest and/or revest in the Reorganized Debtor. Thereafter, each Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan.  From and after the Discharge Date, except as otherwise described in this Plan, each Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein. |
| | | 7.3.4.  **Disbursing Agent**.  If the Plan is confirmed under § 1191(a) of the Bankruptcy Code the Reorganized Debtor shall serve as the disbursing agent, without bond, for purposes of making transfers and payments under this Plan. If the Plan is confirmed under § 1191(b) of the Bankruptcy Code the disbursing agent shall be: |
| | | ☐     SubV Trustee of the Reorganized Debtor |
| | | ☑     The Reorganized Debtor as request is hereby made pursuant to § 1194(b) of the Bankruptcy Code. |

| 7.4. | **Settlement of disputed Claims** | Each Reorganized Debtor will each have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure respecting the Estate. |
|------|-----------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|

## ARTICLE 8:   GENERAL PROVISIONS

| 8.1. | **Definitions** | The definitions set forth in § 101 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
|------|-----------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|

8.1.1.  ***Ad Valorem* Tax Authorities** means the following:

- Anderson County

8.1.2.  **Administrative Claim** means any right to payment constituting a cost or expense of administration of the Case of a kind specified under § 503(b) of the Bankruptcy Code and entitled to priority under §§ 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (i) any actual and necessary costs and expenses of preserving the Estate of the Debtor; (ii) any actual and necessary costs and expenses of operating any of the Debtor's business enterprises; (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business enterprise; (iv) all compensation and reimbursement of expenses to the extent awarded by the Court under §§ 330, 331 or 503 of the Bankruptcy Code; (v) any fees or charges assessed against the Estate under § 1930 of chapter 123 of title 28 of the United States Code; and (vi) any Claim for goods delivered to the Debtor within twenty days of the Petition Date and entitled to administrative priority pursuant to § 503(b)(9) of the Bankruptcy Code.

8.1.3.  **Allowed Amount** means the amount in lawful currency of the United States of any Allowed Claim, or the number of shares representing any Allowed Interest.

8.1.4.  **Allowed** means, with reference to any Claim or Interest: (i) a Claim against or Interest in the Debtor, proof of which, if required, was filed on or before the Bar Date, which is not a Contested Claim or Contested Interest; (ii) if no proof of claim or interest was so filed, a Claim against or Interest in the Debtor that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009; or (iii) a Claim or Interest allowed hereunder or by Final Order.  Moreover, the following Claims or Interests are not Allowed:  (i) any Claim or Interest allowed solely for the purpose of voting to accept or

reject the Plan pursuant to an order of the Court; (ii) any Claim or Interest, or any portion thereof, which is subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order; and (iii) any Claim or Interest, or any portion thereof, which is attributable to punitive damages or penalties.

8.1.5. **Avoidance Action** means any claim or cause of action belonging to the Debtor and arising under the Bankruptcy Code including, but not limited to, §§ 544, 547, 548 and 550.

8.1.6. **Ballot** means each of the ballot forms distributed to each holder of an impaired Claim or Interest (other than to holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan.

8.1.7. **Bankruptcy Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the date hereof.

8.1.8. **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

8.1.9. **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under § 2075 of title 28 of the United States Code, and local rules of the Court, as the context requires, and as in effect on the date hereof.

8.1.10. **Bar Date** means the deadline by which a Claim must have been timely filed. The Bar Date for all Administrative Claims is the date that is ninety (90) days after the Effective Date.

8.1.11. **BBF** means Blue Bridge Financial, Inc.

8.1.12. **BMO** means BMO Bank N.A.

8.1.13. **BofA** means Banc of America Leasing & Capital, LLC.

8.1.14. **Business Day** means any day other than a Saturday, a Sunday or a "legal holiday" as that phrase is defined in Bankruptcy Rule 9006(a).

8.1.15. **Case** means the above entitled and numbered case which was commenced by the Debtor filing of a voluntary petition for relief pursuant to the Bankruptcy Code.

8.1.16. **Causes of Action** means any and all claims, rights and causes of action that have been or could have been brought by or on behalf of the Debtor arising before, on or after the Petition Date, known or unknown, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to

any and all claims, rights and causes of action the Debtor or the Estate may have against any Person arising under chapter 5 of the Bankruptcy Code, or any similar provision of state law or any other law, rule, regulation, decree, order, statute or otherwise, including but not limited to any claim or cause of action under a policy of insurance, claims, if any, against officers and directors of the Debtor, Avoidance Actions under the Code, and any other causes of action belonging to the Debtor or the Estate.

8.1.17. **CCG** means Commercial Credit Group, Inc.

8.1.18. **Claim** means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

8.1.19. **Claimant** means the holder of a Claim or Interest.

8.1.20. **Claims Objection Deadline** means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be ninety (90) days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein.

8.1.21. **Class** means all of the holders of Claims or Interests with respect to the Debtor that has been designated as a class in Article 4 hereof.

8.1.22. **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

8.1.23. **Confirmation Date** means the date of entry by the Bankruptcy Court of an order confirming the Plan.

8.1.24. **Confirmation Hearing** means the hearing or hearings to be held before the Bankruptcy Court in which the Debtor shall seek Confirmation of this Plan.

8.1.25. **Confirmation Order** means the Final Order confirming this Plan.

8.1.26. **Contested** when used with respect to a Claim or Interest, means a Claim against or Interest in the Debtor that is: (i) listed in any of the Debtor's Schedules as disputed, contingent, or unliquidated and as to which a proof of claim has been timely filed; (ii) listed in any of the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim or Interest has been filed with the Bankruptcy Court, to the extent the proof of Claim or Interest amount exceeds the amount provided for in any of the Debtor's Schedules; or (iii) the subject

of an objection which has been or may be timely filed by any party in interest or the United States Trustee and which claim has not been disallowed by Final Order.  To the extent an objection relates to the allowance of only a part of a Claim or Interest, such a Claim or Interest shall be a Contested Claim or Contested Interest only to the extent of the objection.

8.1.27. **Creditor** means holder of a Claim as of the Petition Date.

8.1.28. **Crossroads** means Crossroads Equipment Lease & Finance, LLC.

8.1.29. **Debtors** collectively mean Trucklines, Trans and Fast Ways.

8.1.30. **Discharge Date** means the date the Reorganized Debtor attains a discharge under § 1192 of the Bankruptcy Code.

8.1.31. **Entity** includes any individual, partnership, corporation, estate, trust, governmental unit, person, and the United States Trustee.

8.1.32. **Estate** means the bankruptcy estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of this Case.

8.1.33. **EverBank** means EverBank N.A. f/k/a TIAA, FSB assignee of TIAA Commercial Finance. Inc.

8.1.34. **Fast Ways** means Eagle Fast Ways, Inc., one of the Debtors herein.

8.1.35. **Final Order** means: (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending or, (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the Confirmation Order may be treated as a Final Order if no stay pending appeal has been obtained.

8.1.36. **GM** means AmeriCredit Financial Services, Inc. d/b/a GM Financial.

8.1.37. **Huntington** means Huntington National Bank.

8.1.38. **Initial Distribution Date** means the first Business Day on which a distribution is made under the Plan to holders of Allowed Claims.

8.1.39. **Insider** means: (i) a director of the Debtor; (ii) an officer of the Debtor; (iii) a person in control of the Debtor; (iv) a partnership in which the Debtor is general partner; (v) a general partner of the Debtor; (vi) a relative of a general partner in, general partner of, or person in control of the Debtor, (vii) an affiliate (defined in § 101(2) of the Bankruptcy Code) of the Debtor or an Insider of an affiliate as if such affiliate were a Debtor; and (viii) a managing agent of the Debtor.

8.1.40. **Interest** means: (i) the membership interests or ownership interests in the Debtor; and (ii) any right or option, however arising, to acquire a membership interest or any other equity interest in the Debtor.

8.1.41. **Lien** means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtor's estate, which is permitted by, or not avoided pursuant to the Bankruptcy Code.

8.1.42. **Mitsubishi** means Mitsubishi HC Capital America, Inc.

8.1.43. **Mitsui** means Sumitomo Mitsui Finance and Leasing, Inc.

8.1.44. **PACCAR** means PACCAR Financial Corp.

8.1.45. **Petition Date** means October 4, 2023, the date the Debtor filed a voluntary bankruptcy petition commencing this Case.

8.1.46. **Plan** means this "Amended Plan of Reorganization [Dated January 12, 2024]", including all exhibits and attachments, each of which is hereby incorporated and made part thereof, as modified or amended from time to time in accordance with § 1127 of the Bankruptcy Code.

8.1.47. **Plan Rate** means the Prime Rate as of the Effective Date or such other rate of interest as is determined by the Bankruptcy Court.

8.1.48. **Plan Term** means the duration of the Plan which in this case is five (5) years from and after the Effective Date.

8.1.49. **PNC** means PNC Bank, National Association, successor to PNC Equipment Finance.

8.1.50. **Prime Rate** means the prime interest rate quoted and published from time-to-time in the "Money Rates" section of the *Wall Street Journal*.

8.1.51. **Priority Claim** means all Claims entitled to priority under §§ 507(a)(2)-(a)(7) and (a)(9)-(a)(10) of the Bankruptcy Code.

8.1.52. **Priority Tax Claim** means all Claims for Taxes entitled to priority under § 507(a)(8) of the Bankruptcy Code, and shall include all Tax Claims secured by assets of the Estate.

8.1.53. ***Pro Rata*** means proportionately, so that with respect to a particular Allowed Claim, the ratio of: (i) the monies or property disbursed on account of such Allowed Claim to the amount of such Allowed Claim, is the same as the ratio of (ii) the monies or property disbursed on account of all Allowed Claims of the Class in which such Allowed Claim is included to the amount of all Allowed Claims in that Class.

8.1.54. **Professionals** means those Entities: (i) employed under §§ 327 or 1103 of the Bankruptcy Code; and (ii) entitled, under §§ 330, 503(b), 506(b), and 507(a)(2) of the Bankruptcy Code, to seek compensation for legal, accounting and/or other professional services and the costs and expenses related to such services from the Debtor and/or the Estate.

8.1.55. **Rejection Damages Deadline** means the later of the Bar Date, or thirty (30) days after the entry of an order approving the rejection of an executory contract or unexpired lease.

8.1.56. **Reorganized Debtors** collectively mean Trucklines, Trans and Fast Ways after the entry of the Confirmation Order.

8.1.57. **Reorganized Fast Ways** means Fast Ways after the entry of the Confirmation Order.

8.1.58. **Reorganized Trans** means Trans after the entry of the Confirmation Order.

8.1.59. **Reorganized Trucklines** means Trucklines after the entry of the Confirmation Order.

8.1.60. **Schedules** means those schedules, statements and lists filed with the Court by the Debtor pursuant to and in accord with § 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b).

8.1.61. **Secured Claim** means a Claim secured by a Lien on any property of the Estate, but only to the extent of the value of the interest of the holder of such Claim in the interest of the subject Estate in such property, the calculation of which shall not include any demand for default interest, penalty interest or other similar demands.

8.1.62. **Secured Claim Interest Rate** means a fixed interest rate of .05% over the Prime Rate or such other rate as the Bankruptcy Court determines at the Confirmation Hearing is necessary to provide the holders of Allowed Secured Claims with the present value of their collateral.

8.1.63. **Subordinated Claim** means: (i) any Claim, or portion of a Claim, that is subject to subordination under § 510 of the Bankruptcy Code; and (ii) any Claim, or portion of a Claim, for fines, penalties, forfeitures, for multiple, exemplary, or punitive damages, or other non-pecuniary, direct or non-proximate damages.

8.1.64. **SubV Trustee** means individual appointed as trustee under § 1183 of the Bankruptcy Code.

8.1.65. **Tax** means and includes any federal state, county and local income, *ad valorem*, excise, stamp and other tax of any type or nature whatsoever.

8.1.66. **Tax Claim** means any and all Secured or Priority Claims of the Debtor for the payment of any Taxes: (i) accorded a priority pursuant to § 507(a)(8) of the Code; or (ii) secured by valid Liens on property of the Estate existing on the Confirmation Date.

8.1.67. **Trans** means Eagle Trans, Inc., one of the Debtors herein.

8.1.68. **Trucklines** means Eagle Trucklines, Inc., one of the Debtors herein.

8.1.69. **United States Trustee** means the Office of the United States Trustee for Region Six.

8.1.70. **Unsecured Claim** means a Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

8.1.71. **Unsecured Creditor Pool** means a fund established to receive monies from each of the Debtors for the benefit of the holders of Allowed Class 3 Claims, the funding of which will commence no later than October 1, 2024.

8.1.72. **USBank** means U.S. Bank Equipment Finance.

8.1.73. **Verdant** means Verdant Commercial Capital, LLC.

8.1.74. **VFS** means VFS US, LLC *dba* Volvo Financial Servicers.

| | | |
|---|---|---|
| 8.2. | **Effective Date** | The date on which the Confirmation Order becomes a Final Order. |
| 8.3. | **Severability** | If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceabililty and operative effect on any other provision of this Plan. |
| 8.4. | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |

| 8.5. | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

| 8.6. | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided for in this Plan. |

| 8.7. | **Corporate Governance** | The management of each Reorganized Debtor will remain unaltered. |

| 8.8. | **Retention of Jurisdiction** | The Bankruptcy Court shall retain exclusive jurisdiction over this Case after Confirmation, notwithstanding consummation or substantial consummation, for the following purposes: |

8.8.1.   to consider and effect any modification of this Plan under § 1127 of the Bankruptcy Code;

8.8.2.   to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

8.8.3.   to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

8.8.4.   to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

8.8.5.   to hear and determine all claims that the Debtor, as debtor in possession qua trustee, could assert under the Bankruptcy Code;

8.8.6.   to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

8.8.7.   to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan;

8.8.8.   to approve the reasonableness of any payments made or to be made, within the meaning of § 1129(a)(4) of the Bankruptcy Code;

8.8.9.   to exercise the jurisdiction granted pursuant to §§ 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

8.8.10. to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan;

8.8.11. to hear and determine any controversies with respect to any settlements approved by the Bankruptcy Court;

8.8.12. to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Reorganized Debtor; and

8.8.13. to enter a final decree closing any or all Cases.

**Failure of the Bankruptcy Court to Exercise Jurisdiction**.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, in or related to the Debtor's Estate, including with respect to the matters set forth herein, this Article 8 shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

| 8.9. | **Rules of construction** | The rules of construction set forth in § 102 of the Code shall apply and are supplemented as follows: |
|------|---------------------------|--------------------------------------------------------------------------------------------------------|

8.9.1.   The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clauses contained in the Plan.

8.9.2.   Unless otherwise specified, a reference to an article or a section is a reference to that article or section of the Plan.

8.9.3.   Any reference in the Plan to a document being in a particular for or on particular terms and conditions meant that the document shall be substantially in such form or substantially on such terms and conditions.

8.9.4.   Any reference in the Plan to an existing document means such document, as it may have been amended, modified or supplemented from time to time as of the Effective Date.

8.10.   All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

## ARTICLE 9:   DISCHARGE

### DISCHARGE IF PLAN IS CONFIRMED UNDER § 1191(a) OF THE BANKRUPTCY CODE

| | |
|---|---|
| ☐ | **Discharge if the Debtor is an individual and § 1141(d)(3) is not applicable.** Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. |
| ☐ | **Discharge if the Debtor is a partnership and § 1141(d)(3) is not applicable.** On the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan. |
| ☑ | **Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable.** On the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:<br><br>(i) imposed by this Plan; or<br><br>(ii) to the extent provided in § 1141(d)(6). |
| ☐ | No discharge if § 1141(d)(3) is applicable. In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case. |

### DISCHARGE IF PLAN IS CONFIRMED UNDER § 1191(b) OF THE BANKRUPTCY CODE

| | |
|---|---|
| | If the Plan is confirmed under section 1191(b) of this title, as soon as practicable after completion by the Debtor of all payments due within the Plan Term, the Court shall grant the Debtor a discharge of all debts provided in §§ 503 and 1141(d)(1)(A) of the Bankruptcy Code to the extent provided for in the Plan, except any debt:  (1) on which the last payment is due after the Plan Term; or (2) of the kind specified in § 523(a) of the Bankruptcy Code. |

### ARTICLE 10:  OTHER PROVISIONS

| | |
|---|---|
| 10.1. **Conditions to Consummation** | The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the |

Debtor:

10.1.1. The Confirmation Order must have become a Final Confirmation Order.

10.1.2. No request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending; and

10.1.3. All actions, documents and agreements necessary to implement the Plan shall have been effectuated or executed.

10.1.4. **Waiver of Conditions**. Each of the conditions set forth above may be waived in whole or in part by the Debtor in its sole and absolute discretion, without any notice to parties in interests or the Bankruptcy Court, and without a hearing. The Debtor's waiver of any one condition shall not be deemed a waiver of any other condition.

| | |
|---|---|
| 10.2. **Binding Effect** | Except as otherwise provided in § 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan. |
| 10.3. **Injunction** | 10.3.1. **Permanent Injunction**. Except as otherwise expressly provided in, or permitted under, this Plan, all Creditors and Interest holders, are permanently enjoined on and after the Effective Date against the collecting of Claims against the Reorganized Debtor in any manner other than as provided for in the Plan. <br><br> 10.3.2. **The injunction provisions set forth herein do not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination of the Allowed Amount of any Claims that arose prior to the Effective Date by a court of competent jurisdiction.** |
| 10.4. **Notice of Default** | **Notice of Default**. Except as otherwise provided herein with respect to the treatment of a Class of Creditors, in the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the defaulting Reorganized Debtor with copies to counsel of record for the defaulting Reorganized Debtor specifying the nature of the default. Upon receipt of the default notice, the defaulting Reorganized Debtor shall have ten (10) days to cure such default from the time of receipt of the default notice. If such default has not been cured within the applicable time period any such Creditor or party-in-interest shall have the right to exercise any and all available remedies, including the right to undertake |

foreclosure upon any collateral securing the obligation, if applicable.

**10.5. Miscellaneous**

10.5.1. **Request for Relief Under Section 1191(b)**.  In the event any Class of Creditors or Interests shall fail to accept this Plan in accordance with §§ 1129(a) and 1191(a) of the Bankruptcy Code, the Debtor requests the Bankruptcy Court to confirm this Plan in accordance with the provisions of § 1191(b) of the Bankruptcy Code.

10.5.2. **Incorporation of Rule 9019**. To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.

10.5.3. **Computation of Time**.  The computation of any time periods prescribed or allowed by the Plan shall be governed by Bankruptcy Rule 9006.

10.5.4. **Exhibits**.  All exhibits to the Plan are incorporated into the Plan and shall be deemed to be part of the Plan.

10.5.5. **Modification**.  The Debtor may alter, amend or modify this Plan under § 1127 of the Bankruptcy Code or as otherwise permitted by law prior to Confirmation.  Further, the Reorganized Debtor may also seek to modify the Plan after Confirmation and prior to substantial consummation of the Plan so long as the treatment of the holders of Allowed Claims or Interests are not materially or adversely affected.

10.6.    **Due Authorization**.  Each and every Claim and Interest holder who elects to participate in the distributions provided for herein warrant that such Claim or Interest holder is authorized to accept, in consideration of such Claim against or Interest in the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claim or Interest holder under this Plan.

10.7.    **Authorization of Corporate Action**.    All matters and actions provided for under this Plan involving the structure of the Debtor or action to be taken by or required of the Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be deemed to be authorized and approved in all respects without any requirement for further action by the members or partners of the Debtor, as applicable.

10.8.    **Further Assurances and Authorizations**.    The Debtor and/or the Reorganized Debtor, if and to the extent necessary,

shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan.

10.9.  **Privileged Communications; Work Product.**  For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Reorganized Debtor shall succeed to the interest of the Debtor and Estate, to the extent provided by applicable law.

10.10.  **No Interest**.  Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

10.11.  **No Attorneys' Fees**.  No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtor, except as specified herein or as allowed by a prior order of the Bankruptcy Court.

10.12.  **Post-Confirmation Actions**.  After Confirmation, the Reorganized Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of this Plan.

10.13.  **Post-Confirmation Conversion and/or Dismissal**.  Any Creditor or interested party, in the event of a default under the terms of this Plan, may file a motion to dismiss or convert this case pursuant to § 1112 of the Bankruptcy Code after the Plan is confirmed if the Case has not been closed or the Plan confirmed pursuant under section 1191(b).  If the Bankruptcy Court orders the case converted to one under Chapter 7, then all property that had been property of the chapter 11 bankruptcy estate, and not previously disbursed under the terms of this Plan, shall revest in the Chapter 7 bankruptcy estate.  Further, to the extent relief from stay had not previously been granted during the chapter 11 bankruptcy process, a new automatic stay shall be reimposed upon all property of the Chapter 7 bankruptcy estate.

10.14.  **Post-Confirmation Removal of Reorganized Debtor**.  In the event the Reorganized Debtor fails to perform its obligations under the confirmed Plan, the Court shall order the Reorganized Debtor to be removed as a debtor-in-possession in accord with § 1185(a) of the Bankruptcy Code and the SubV Trustee shall perform the duties specified in § 704(a)(8) of the Bankruptcy Code and paragraphs (1), (2), and (6) of § 1106(a) of this title,

including operating the business of the debtor in accord with § 1183(b)(5) of the Bankruptcy Code.

10.14.1.      Should this Plan be confirmed pursuant to § 1191(a) of the Bankruptcy Code any and all property that vests in the Reorganized Debtor under the terms of this Plan shall vest and/or revest in the Reorganized Debtor's Estate in the event the Reorganized Debtor is removed under § 1185(a) of the Bankruptcy Code.

10.15. **Minimum Distribution**. Notwithstanding anything to the contrary in this Plan, the Reorganized Debtor shall be required to make distributions under this Plan of a sum less than $100.00 to any Allowed Claim holder. In such case, the Allowed Amount of such Claims shall be reduced to zero and such funds shall be retained by the Reorganized Debtor.

10.16. **Substantial Consummation**. If the Plan is confirmed pursuant to § 1191(a) of the Bankruptcy Code, substantial consummation shall be deemed to occur when the Reorganized Debtor makes initial distributions pursuant to the terms of the Plan.

10.17. **Notices**. All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. Any notices required to be delivered to the Debtor shall be addressed as follows:

**To the Respective Debtor and/or Reorganized Debtor:**
Eagle Trucklines, Inc.
Eagle Trans, Inc.
Eagle Fast Ways, Inc.
Attention:  Gurinder Chouhan
525 Woodland Square Blvd.
Conroe, Texas 77384

**With a copy to:**
Robert T. DeMarco
DeMarco Mitchell, PLLC
500 N. Central Expressway, 500
Plano, TX 75074

10.18. **Notices and Distributions**. On and after the Effective Date, all notices, requests and distributions to Claimants shall be sent to the last known address of: (1) the Claimant or its/his/her attorney of record as reflected in the Claimant's proof of claim; or (2) if there is no such evidence of a last known address, to the last known address of the Claimant according to the books and

records of either Debtor.  Any Claimant may designate another address for the purposes of this Section by providing the subject Reorganized Debtor written notice of such address, which notice will be effective upon receipt by said Reorganized Debtor.

10.19.  **Unclaimed Property**.  If any property distributed under the Plan by the Reorganized Debtor remains unclaimed for a period of two (2) years the initial date of the attempted delivery such unclaimed property shall be forfeited by the Claimant and the unclaimed property and the right to receive it shall revert to and vest in the subject Reorganized Debtor free and clear of any claims, rights or interests.  Said Reorganized Debtor, on the anniversary of the Effective date, shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of all holders of unclaimed distributions.

10.20.  **Setoff**.  Except as specifically provided in the Plan, no Creditor shall retain any contractual or statutory right to set off any asset in which either Debtor or Reorganized Debtor has an interest in satisfaction of that Creditor's pre-petition Claim.  Any right to set off a claim against an asset of either Debtor or Reorganized Debtor which is not specifically retained is waived.

10.21.  **No Admissions**.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety, any classification of any Claim or Interest, or the valuation of any property.

Respectfully submitted,

Dated: **January 12, 2024**

_/s/ Gurinder Chouhan_

**Gurinder Chouhan**
President,
Eagle Trucklines, Inc.
Eagle Trans, Inc.
Eagle Fast Ways, Inc.

Presented by:

_/s/ Robert T. DeMarco_

**DeMarco•Mitchell, PLLC**
Robert T. DeMarco, Texas Bar No. 24014543
**Email**    robert@demarcomitchell.com
Michael S. Mitchell, Texas Bar No. 00788065
**Email**    mike@demarcomitchell.com
500 N. Central Expressway, 500
Plano, TX 75074
**T**        972-578-1400
**F**        972-346-6791

**Attorneys for the Debtors and
Debtors-in-Possession**

# EXHIBIT "A"

A.    **CHAPTER 7 DIVIDENDS PAID**.  The Debtor makes the following assumptions:

| ASSET | LIQUIDATION VALUE | LIEN | NET ASSET VALUE |
|---|---|---|---|
| Vehicles | $2,494,000[3] | $7,364,680 | $0.00 |
| Cash \| Bank Accounts | $11,199 | $98,574 | $0.00 |
| Inventory | $0.00 | $0.00 | $0.00 |
| Furnishings | $12,500[4] | $0.00 | $12,500.00 |
| **TOTAL** | | | **$12,500.00** |

As set forth in the above table, Debtor asserts the liquidation value of the Debtor's NONEXEMPT collective assets, net of secured liens, is approximately $0.00.

B.    **PLAN DIVIDENDS PAID**.  The Debtor makes the following assumptions:

| ASSUMPTION | COST |
|---|---|
| The Debtors are able to continue operating through the Plan Term and will meet or exceed the projections provided herewith. | n/a |
| The Debtors will not liquidate any equipment or inventory. | n/a |
| The Debtors can get drivers/trucks back on the road to meet demand. | n/a |
| California crops have a normal year -- neither excessive drought nor rain in 2024. | n/a |

The Plan provides for a $400,000 dividend to all unsecured creditors over a period of five (5) years**.** Debtor contends the Plan provides for a greater dividend to all creditors than would a liquidation of assets under chapter 7.

---

[3] This value is 40% of the value listed in the Debtor's Schedules (**$6,235,000**).
[4] This value is 20% of the value listed in the Debtor's Schedules (**$62,500**).

# EXHIBIT "B"

Set of five (5) year projections are attached.

| | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 |
|---|---|---|---|---|---|---|
| Income (1)(2) | 122.000% | 122.000% | 101.000% | 101.500% | 101.500% | 101.000% |
| Freight Income | $ 565,347 | $ 689,723 | $ 696,620 | $ 707,069 | $ 717,675 | $ 724,852 |
| Other Income | $ - | $ - | $ - | $ - | $ - | $ - |
| Property Sub-Lease | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Income | $ 565,347 | $ 689,723 | $ 696,620 | $ 707,069 | $ 717,675 | $ 724,852 |
| | | | | | | |
| Expenses | | | | | | |
| Accounting | $ - | $ - | $ - | $ - | $ - | $ - |
| Advertising | $ - | $ - | $ - | $ - | $ - | $ - |
| Automobile | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 |
| Auto Insurance | $ - | $ - | $ - | $ - | $ - | $ - |
| Bank Service Charges | $ - | $ - | $ - | $ - | $ - | $ - |
| Bus Licenses and Permits | $ - | $ - | $ - | $ - | $ - | $ - |
| Compliance | $ - | $ - | $ - | $ - | $ - | $ - |
| Computer and Internet | $ - | $ - | $ - | $ - | $ - | $ - |
| Dispatch & Tracking | $ - | $ - | $ - | $ - | $ - | $ - |
| Driver Permitting | $ - | $ - | $ - | $ - | $ - | $ - |
| Fuel | $ 257,233 | $ 317,273 | $ 323,928 | $ 332,323 | $ 340,896 | $ 347,929 |
| Medical Insurance | $ - | $ - | $ - | $ - | $ - | $ - |
| Consulting/Contract Labor | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 |
| Meals and Entertainment | $ - | $ - | $ - | $ - | $ - | $ - |
| Office Expense | $ - | $ - | $ - | $ - | $ - | $ - |
| Cleaning | $ - | $ - | $ - | $ - | $ - | $ - |
| Office Software | $ - | $ - | $ - | $ - | $ - | $ - |
| Office Supplies | $ - | $ - | $ - | $ - | $ - | $ - |
| State Hiway/Fees/Taxes | $ 4,849 | $ 5,916 | $ 5,976 | $ 6,065 | $ 6,156 | $ 6,218 |
| Owner Operator/1099 Drivers | $ 136,027 | $ 165,953 | $ 167,612 | $ 170,126 | $ 172,678 | $ 174,405 |
| Payroll Expenses | $ 3,053 | $ 3,725 | $ 3,762 | $ 3,818 | $ 3,875 | $ 3,914 |
| Payroll Taxes | $ 735 | $ 897 | $ 906 | $ 919 | $ 933 | $ 942 |
| Postage & Shipping | $ - | $ - | $ - | $ - | $ - | $ - |
| Telephone | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 |
| Transportation Expense (Auto) | $ - | $ - | $ - | $ - | $ - | $ - |
| Automobile Fuel | $ 138 | $ 168 | $ 170 | $ 173 | $ 175 | $ 177 |
| Dol Lic & Reg (Equipment) | $ 1,868 | $ 2,279 | $ 2,302 | $ 2,336 | $ 2,371 | $ 2,395 |
| Insurance (Equipment) | $ 46,500 | $ 46,500 | $ 46,500 | $ 46,500 | $ 46,500 | $ 46,500 |

| | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 |
|---|---|---|---|---|---|---|
| Rental - Trailer | $ - | $ - | $ - | $ - | $ - | $ - |
| Tractor/Trailer Maintenance | $ - | $ - | $ - | $ - | $ - | $ - |
| Parts | $ 1,272 | $ 1,552 | $ 1,568 | $ 1,591 | $ 1,615 | $ 1,631 |
| Repair | $ 9,887 | $ 12,062 | $ 12,183 | $ 12,366 | $ 12,551 | $ 12,677 |
| Tires | $ 856 | $ 1,045 | $ 1,055 | $ 1,071 | $ 1,087 | $ 1,098 |
| Towing | $ - | $ - | $ - | $ - | $ - | $ - |
| Travel | $ - | $ - | $ - | $ - | $ - | $ - |
| Auto Fuel | $ - | $ - | $ - | $ - | $ - | $ - |
| Hotel | $ - | $ - | $ - | $ - | $ - | $ - |
| Meals | $ - | $ - | $ - | $ - | $ - | $ - |
| Utilities | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 |
| Office/ Yard Rental -- | $ - | $ - | $ - | $ - | $ - | $ - |
| Main | $ 1,265 | $ 1,265 | $ 1,265 | $ 1,265 | $ 1,265 | $ 1,265 |
| Offsite #1 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 |
| Offsite #2 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 |
| Miscellaneous/Uncategorized Expense (5) | $ 16,960 | $ 20,692 | $ 20,899 | $ 21,212 | $ 21,530 | $ 21,746 |
| Total Expenses | $ 486,244 | $ 584,926 | $ 593,725 | $ 605,366 | $ 617,234 | $ 626,497 |
| Net Operating Income | $ 79,102 | $ 104,797 | $ 102,895 | $ 101,704 | $ 100,441 | $ 98,355 |
| | | | | | | |
| Plan Payments | | | | | | |
| Attorney Fees | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 |
| Sub V Trustee Fee | $ 500 | $ - | $ - | $ - | $ - | $ - |
| Pre-Petition Agreed-Upon | $ - | $ - | $ - | $ - | $ - | $ - |
| Subtotal Administrative | $ 3,500 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 |
| DESCRIPTION | | | | | | |
| Debt Service - Trucklines | $ - | $ - | $ - | $ - | $ - | $ - |
| CLASS 1B BMO 5001 AGREEMENT TRAILERS (2) (ASGN EVERBANK) 58537; 58536 | $ 2,345 | $ 2,345 | $ 2,345 | $ 2,345 | $ 2,345 | $ 2,345 |
| CLASS 1C GM FINANCIAL 2022 GMC YUKON 1GKS2DKL8NR103580 | $ 1,483 | $ 1,483 | $ 1,483 | $ 1,483 | $ 1,483 | $ 1,483 |
| CLASS 1D SUMITOMO-MITSUI Agreement #1 Tractor VIN 1XKYD49XPJ231983 | $ 2,756 | $ 2,756 | $ 2,756 | $ 2,756 | $ 2,756 | $ 2,756 |
| CLASS 1E SUMITOMO-MITSUI Agreement #2 Reefer Trailer P2989401/P2989404 | $ 3,384 | $ 3,384 | $ 3,384 | $ 3,384 | $ 3,384 | $ 3,384 |
| CLASS 1F MITSUBISHI CONTRACT #1 | | | | | | |

| | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 |
|---|---|---|---|---|---|---|
| 2021 Great Dane Reefer VIN 1GR1A0629MW228307 | | | | | | |
| 2021 Great Dane Reefer VIN 1GR1A0628MW228329 | | | | | | |
| 2021 Great Dane Reefer VIN 1GR1A0624MW228330 | | | | | | |
| CLASS 1F MITSUBISHI CONTRACT #1 TOTAL | $ 2,117 | $ 2,117 | $ 2,117 | $ 2,117 | $ 2,117 | $ 2,117 |
| CLASS 1G MITSUBISHI CONTRACT #2 | | | | | | |
| 2023 Utility Refrigerated 1UYVS2533P2910224/TKU 6001352087 | | | | | | |
| 2023 Utility Refrigerated 1UYVS2533P2910225/TKU 6001362318 | | | | | | |
| CLASS 1G MITSUBISHI CONTRACT #2 TOTAL | $ 3,181 | $ 3,181 | $ 3,181 | $ 3,181 | $ 3,181 | $ 3,181 |
| CLASS 1H PACCAR PJ247719 | $ 2,669 | $ 2,669 | $ 2,669 | $ 2,669 | $ 2,669 | $ 2,669 |
| CLASS 1I PACCAR PJ247718 | $ 2,609 | $ 2,609 | $ 2,609 | $ 2,609 | $ 2,609 | $ 2,609 |
| CLASS 1J PNC PJ239781 & TRAILER | $ 3,731 | $ 3,731 | $ 3,731 | $ 3,731 | $ 3,731 | $ 3,731 |
| CLASS 1K BANK OF AMERICA 2023 Utilty Refer & Refrig Unit 1UYVS2538P2911 & 600136340 | $ 1,779 | $ 1,779 | $ 1,779 | $ 1,779 | $ 1,779 | $ 1,779 |
| CLASS 1L US BANK 2023 REFER & REFRIG UNIT | $ 3,359 | $ 3,359 | $ 3,359 | $ 3,359 | $ 3,359 | $ 3,359 |
| CLASS 1M CCG VOLVO VIN 4VAN9CEJ5MN282863 & 4VANC9EJ5MN282864 | $ 2,149 | $ 2,149 | $ 2,149 | $ 2,149 | $ 2,149 | $ 2,149 |
| CLASS 1N PAWNEE #1 VOLVO VIN 4VAN9CEJEMN282862 | $ 2,029 | $ 2,029 | $ 2,029 | $ 2,029 | $ 2,029 | $ 2,029 |
| CLASS 1O PAWNEE #2 THERMO-KING TRIPAC | $ 742 | $ 742 | $ 742 | $ 742 | $ 742 | $ 742 |
| CLASS 1P PAWNEE #3 4-THERMO-KING TRIPAC UNITS | $ 773 | $ 773 | $ 773 | $ 773 | $ 773 | $ 773 |
| CLASS 1Q PAWNEE #4 2-THERMO-KING TRIPAC UNITS | $ 480 | $ 480 | $ 480 | $ 480 | $ 480 | $ 480 |
| CLASS 1R VERDANT 2023 KENWORTH 1XKYD49X1PJ231982 | $ 3,059 | $ 3,059 | $ 3,059 | $ 3,059 | $ 3,059 | $ 3,059 |
| CLASS 1S CROSSROADS VOLVO VIN- 4V4NC9EJXMN282860 | $ 1,352 | $ 1,352 | $ 1,352 | $ 1,352 | $ 1,352 | $ 1,352 |

| | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 |
|---|---|---|---|---|---|---|
| CLASS 1T VFS 2021 Volvo VNL64T-760 Truck Tractor, VIN-4V4NC9EH8MN237994; and 2021 Volvo VNL64T-760 Truck Tractor, VIN-4V4NC9EJ3MN249084. | $ 1,884 | $ 1,884 | $ 1,884 | $ 1,884 | $ 1,884 | $ 1,884 |
| CLASS 1U HUNTINGTON NATIONAL BANK #001-0761825-500 2023 KENWORTH T680 VIN 1XKYD49X2PJ247589 & THERMO KING HTG1307538 | $ 2,646 | $ 2,646 | $ 2,646 | $ 2,646 | $ 2,646 | $ 2,646 |
| CLASS 1V BMO COMBINED AGREEMENT TRAILERS (12) | $ 17,152 | $ 17,152 | $ 17,152 | $ 17,152 | $ 17,152 | $ 17,152 |
| CLASS 1W BBF 2021 VOLVO VIN-4V4NC9EJ9MN282865 | $ 1,243 | $ 1,243 | $ 1,243 | $ 1,243 | $ 1,243 | $ 1,243 |
| CLASS 1X SUMITOMO-MITSU VOLVO VIN NN298776 & NN298775 & REFERS | $ 4,036 | $ 4,036 | $ 4,036 | $ 4,036 | $ 4,036 | $ 4,036 |
| Class 1Y VFS  2022 Volvo VNL64T-860 Truck Tractor, VIN-4V4NC9EJ5NN298772; 2022 Volvo VNL64T-860 Truck Tractor, VIN- | $ 4,339 | $ 4,339 | $ 4,339 | $ 4,339 | $ 4,339 | $ 4,339 |
| CLASS 1Z FASTWAYS PACCAR | $ - | $ - | $ - | $ - | $ - | $ - |
| PACCAR PJ231980 | | | | | | |
| PACCAR PJ231981 | | | | | | |
| PACCAR PJ239724 | | | | | | |
| CLASS 1Z FASTWAYS PACCAR TOTAL | $ 9,302 | $ 9,302 | $ 9,302 | $ 9,302 | $ 9,302 | $ 9,302 |
| CLASS 1AA CONTRACT #1  CROSSROADS 2023 KENWORTH VIN-1XKYD49X3PJ239727 | $ 2,976 | $ 2,976 | $ 2,976 | $ 2,976 | $ 2,976 | $ 2,976 |
| CLASS 1BB CROSSROADS CONTRACT #2 KENWORTH VIN-1XKYD49X9PJ239778 & KENWORTH VIN-1XKYD49X0PJ239779 | $ 6,891 | $ 6,891 | $ 6,891 | $ 6,891 | $ 6,891 | $ 6,891 |
| Other Lease | $ - | $ - | $ - | $ - | $ - | $ - |
| Taxes | $ - | $ - | $ - | $ - | $ - | $ - |
| Unsecured Claims | $ - | $ - | $ - | $ - | $ - | $ - |
| Adequate Protection Plan Payments | | | | | | |
| Total Scheduled SECURED Plan Payments | $ 93,966 | $ 93,466 | $ 93,466 | $ 93,466 | $ 93,466 | $ 93,466 |
| Cash After Operations & Debt Service | $ (14,863) | $ 11,331 | $ 9,429 | $ 8,238 | $ 6,975 | $ 4,889 |
| Cash Carryforward From Prior Period | $ 19,306 | $ 4,442 | $ 15,773 | $ 25,202 | $ 33,440 | $ 40,416 |
| Cash Carryforward | $ 4,442 | $ 15,773 | $ 25,202 | $ 33,440 | $ 40,416 | $ 45,305 |

| | Sep-24 | Oct-24 to Sep-25 | Oct-25 to Sep-26 | Oct-26 to Sep-27 | Oct-27 to Sep-28 | Oct-28 to Sep-29 |
|---|---|---|---|---|---|---|
| **Income (1)(2)** | 100.500% | 106.00% | 108.50% | 107.00% | 104.00% | 103.00% |
| **Freight Income** | $ 728,476 | $ 7,231,979 | $ 7,846,697 | $ 8,395,966 | $ 8,731,805 | $ 8,993,759 |
| **Other Income** | $ - | | | | | |
| **Property Sub-Lease** | $ - | | | | | |
| **Total Income** | $ 728,476 | $ 7,231,979 | $ 7,846,697 | $ 8,395,966 | $ 8,731,805 | $ 8,993,759 |
| | | | | | | |
| **Expenses** | | | | | | |
| **Accounting** | $ - | $ 7,950 | $ 8,626 | $ 9,230 | $ 9,599 | $ 9,887 |
| **Advertising** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Automobile** | $ 2,000 | $ 25,440 | $ 27,602 | $ 29,535 | $ 30,716 | $ 31,637 |
| **Auto Insurance** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Bank Service Charges** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Bus Licenses and Permits** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Compliance** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Computer and Internet** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Dispatch & Tracking** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Driver Permitting** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Fuel** | $ 349,669 | $ 3,393,873 | $ 3,682,352 | $ 3,940,117 | $ 4,097,722 | $ 4,220,653 |
| **Medical Insurance** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Consulting/Contract Labor** | $ 2,000 | $ 25,440 | $ 27,602 | $ 29,535 | $ 30,716 | $ 31,637 |
| **Meals and Entertainment** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Office Expense** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Cleaning** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Office Software** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Office Supplies** | $ - | $ - | $ - | $ - | $ - | $ - |
| **State Hiway/Fees/Taxes** | $ 6,249 | $ 62,457 | $ 67,765 | $ 72,509 | $ 75,409 | $ 77,672 |
| **Owner Operator/1099 Drivers** | $ 175,277 | $ 1,769,612 | $ 1,920,029 | $ 2,054,431 | $ 2,136,608 | $ 2,200,706 |
| **Payroll Expenses** | $ 3,934 | $ 39,583 | $ 42,948 | $ 45,954 | $ 47,793 | $ 49,226 |
| **Payroll Taxes** | $ 947 | $ 9,403 | $ 10,202 | $ 10,916 | $ 11,353 | $ 11,693 |
| **Postage & Shipping** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Telephone** | $ 500 | $ 6,360 | $ 6,901 | $ 7,384 | $ 7,679 | $ 7,909 |
| **Transportation Expense (Auto)** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Automobile Fuel** | $ 178 | $ 1,765 | $ 1,915 | $ 2,049 | $ 2,131 | $ 2,195 |
| **Dol Lic & Reg (Equipment)** | $ 2,407 | $ 23,896 | $ 25,927 | $ 27,742 | $ 28,852 | $ 29,717 |
| **Insurance (Equipment)** | $ 46,500 | $ 591,480 | $ 641,756 | $ 686,679 | $ 714,146 | $ 735,570 |

| | Sep-24 | Oct-24 to Sep-25 | Oct-25 to Sep-26 | Oct-26 to Sep-27 | Oct-27 to Sep-28 | Oct-28 to Sep-29 |
|---|---|---|---|---|---|---|
| Rental - Trailer | $ - | $ - | $ - | $ - | $ - | $ - |
| Tractor/Trailer Maintenance | $ - | $ - | $ - | $ - | $ - | $ - |
| Parts | $ 1,640 | $ 16,277 | $ 17,661 | $ 18,897 | $ 19,653 | $ 20,243 |
| Repair | $ 12,740 | $ 122,113 | $ 132,492 | $ 141,767 | $ 147,438 | $ 151,861 |
| Tires | $ 1,103 | $ 10,954 | $ 11,885 | $ 12,716 | $ 13,225 | $ 13,622 |
| Towing | $ - | $ - | $ - | $ - | $ - | $ - |
| Travel | $ - | $ - | $ - | $ - | $ - | $ - |
| Auto Fuel | $ - | $ - | $ - | $ - | $ - | $ - |
| Hotel | $ - | $ - | $ - | $ - | $ - | $ - |
| Meals | $ - | $ - | $ - | $ - | $ - | $ - |
| Utilities | $ 300 | $ 3,816 | $ 4,140 | $ 4,430 | $ 4,607 | $ 4,746 |
| Office/ Yard Rental -- | $ - | $ - | $ - | $ - | $ - | $ - |
| Main | $ 1,265 | $ 16,091 | $ 17,459 | $ 18,681 | $ 19,428 | $ 20,011 |
| Offsite #1 | $ 400 | $ 5,088 | $ 5,520 | $ 5,907 | $ 6,143 | $ 6,327 |
| Offsite #2 | $ 400 | $ 5,088 | $ 5,520 | $ 5,907 | $ 6,143 | $ 6,327 |
| Miscellaneous/Uncategorized Expense (5) | $ 21,854 | | | | | |
| Total Expenses | $ 629,363 | $ 6,136,685 | $ 6,658,303 | $ 7,124,385 | $ 7,409,360 | $ 7,631,641 |
| Net Operating Income | $ 99,114 | $ 1,095,294 | $ 1,188,394 | $ 1,271,581 | $ 1,322,445 | $ 1,362,118 |
| | | | | | | |
| Plan Payments | | | | | | |
| Attorney Fees | $ 3,000 | $ - | $ - | $ - | $ - | $ - |
| Sub V Trustee Fee | $ - | $ - | $ - | $ - | $ - | $ - |
| Pre-Petition Agreed-Upon | $ - | | | | | |
| Subtotal Administrative | $ 3,000 | $ - | $ - | $ - | $ - | $ - |
| DESCRIPTION | | | | | | |
| Debt Service - Trucklines | $ - | | | | | |
| CLASS 1B BMO 5001 AGREEMENT TRAILERS (2) (ASGN EVERBANK) 58537; 58536 | $ 2,345 | $ 28,140 | $ 28,140 | $ 28,140 | $ 28,140 | $ 28,140 |
| CLASS 1C GM FINANCIAL 2022 GMC YUKON 1GKS2DKL8NR103580 | $ 1,483 | $ 17,796 | $ 17,796 | $ 17,796 | $ 17,796 | $ 17,796 |
| CLASS 1D SUMITOMO-MITSUI Agreement #1 Tractor VIN 1XKYD49XPJ231983 | $ 2,756 | $ 33,072 | $ 33,072 | $ 33,072 | $ 33,072 | $ 33,072 |
| CLASS 1E SUMITOMO-MITSUI Agreement #2 Reefer Trailer P2989401/P2989404 | $ 3,384 | $ 40,608 | $ 40,608 | $ 40,608 | $ 40,608 | $ 40,608 |
| CLASS 1F MITSUBISHI CONTRACT #1 | | | | | | |

| | Sep-24 | Oct-24 to Sep-25 | Oct-25 to Sep-26 | Oct-26 to Sep-27 | Oct-27 to Sep-28 | Oct-28 to Sep-29 |
|---|---|---|---|---|---|---|
| 2021 Great Dane Reefer VIN 1GR1A0629MW228307 | | | | | | |
| 2021 Great Dane Reefer VIN 1GR1A0628MW228329 | | | | | | |
| 2021 Great Dane Reefer VIN 1GR1A0624MW228330 | | | | | | |
| CLASS 1F MITSUBISHI CONTRACT #1 TOTAL | $ 2,117 | $ 25,404 | $ 25,404 | $ 5,022 | $ - | $ - |
| CLASS 1G MITSUBISHI CONTRACT #2 | | | | | | |
| 2023 Utility Refrigerated 1UYVS2533P2910224/TKU 6001352087 | | | | | | |
| 2023 Utility Refrigerated 1UYVS2533P2910225/TKU 6001362318 | | | | | | |
| CLASS 1G MITSUBISHI CONTRACT #2 TOTAL | $ 3,181 | $ 38,172 | $ 38,172 | $ 38,172 | $ 38,172 | $ 38,172 |
| CLASS 1H PACCAR PJ247719 | $ 2,669 | $ 32,028 | $ 32,028 | $ 32,028 | $ 1,707 | $ - |
| CLASS 1I PACCAR PJ247718 | $ 2,609 | $ 31,308 | $ 31,308 | $ 31,308 | $ 1,707 | $ - |
| CLASS 1J PNC PJ239781 & TRAILER | $ 3,731 | $ 44,772 | $ 44,772 | $ 44,772 | $ 4,707 | $ - |
| CLASS 1K BANK OF AMERICA 2023 Utilty Refer & Refrig Unit 1UYVS2538P2911 & 600136340 | $ 1,779 | $ 21,348 | $ 21,348 | $ 21,348 | $ 21,348 | $ 21,348 |
| CLASS 1L US BANK 2023 REFER & REFRIG UNIT | $ 3,359 | $ 40,308 | $ 40,308 | $ 40,308 | $ 40,308 | $ 40,308 |
| CLASS 1M CCG VOLVO VIN 4VAN9CEJ5MN282863 & 4VANC9EJ5MN282864 | $ 2,149 | $ 25,788 | $ 25,788 | $ 25,788 | $ 25,788 | $ 25,788 |
| CLASS 1N PAWNEE #1 VOLVO VIN 4VAN9CEJEMN282862 | $ 2,029 | $ 24,348 | $ 24,348 | $ 24,348 | $ 24,348 | $ 24,348 |
| CLASS 1O PAWNEE #2 THERMO-KING TRIPAC | $ 742 | $ 8,904 | $ - | $ - | $ - | $ - |
| CLASS 1P PAWNEE #3 4-THERMO-KING TRIPAC UNITS | $ 773 | $ 9,276 | $ - | $ - | $ - | $ - |
| CLASS 1Q PAWNEE #4 2-THERMO-KING TRIPAC UNITS | $ 480 | $ 5,760 | $ - | $ - | $ - | $ - |
| CLASS 1R VERDANT 2023 KENWORTH 1XKYD49X1PJ231982 | $ 3,059 | $ 36,708 | $ 36,708 | $ 36,708 | $ 36,708 | $ 36,708 |
| CLASS 1S CROSSROADS VOLVO VIN-4V4NC9EJXMN282860 | $ 1,352 | $ 16,224 | $ 16,224 | $ 16,224 | $ 16,224 | $ 16,224 |

| | Sep-24 | Oct-24 to Sep-25 | Oct-25 to Sep-26 | Oct-26 to Sep-27 | Oct-27 to Sep-28 | Oct-28 to Sep-29 |
|---|---|---|---|---|---|---|
| CLASS 1T VFS 2021 Volvo VNL64T-760 Truck Tractor, VIN-4V4NC9EH8MN237994; and 2021 Volvo VNL64T-760 Truck Tractor, VIN-4V4NC9EJ3MN249084. | $ 1,884 | $ 22,608 | $ 22,608 | $ 22,608 | $ 22,608 | $ 22,608 |
| CLASS 1U HUNTINGTON NATIONAL BANK #001-0761825-500 2023 KENWORTH T680 VIN 1XKYD49X2PJ247589 & THERMO KING HTG1307538 | $ 2,646 | $ 31,752 | $ 31,752 | $ 31,752 | $ 31,752 | $ 31,752 |
| CLASS 1V BMO COMBINED AGREEMENT TRAILERS (12) | $ 17,152 | $ 205,823 | $ 205,823 | $ 205,823 | $ 205,823 | $ 205,823 |
| CLASS 1W BBF 2021 VOLVO VIN-4V4NC9EJ9MN282865 | $ 1,243 | $ 14,916 | $ 14,916 | $ 14,916 | $ 14,916 | $ 14,916 |
| CLASS 1X SUMITOMO-MITSU VOLVO VIN NN298776 & NN298775 & REFERS | $ 4,036 | $ 48,432 | $ 48,432 | $ 48,432 | $ 48,432 | $ 48,432 |
| Class 1Y VFS 2022 Volvo VNL64T-860 Truck Tractor, VIN-4V4NC9EJ5NN298772; 2022 Volvo VNL64T-860 Truck Tractor, VIN- | $ 4,339 | $ 52,068 | $ 52,068 | $ 52,068 | $ 52,068 | $ 52,068 |
| CLASS 1Z FASTWAYS PACCAR | $ - | | | | | |
| PACCAR PJ231980 | | | | | | |
| PACCAR PJ231981 | | | | | | |
| PACCAR PJ239724 | | | | | | |
| CLASS 1Z FASTWAYS PACCAR TOTAL | $ 9,302 | $ 111,624 | $ 111,624 | $ 111,624 | $ 111,624 | $ 111,624 |
| CLASS 1AA CONTRACT #1 CROSSROADS 2023 KENWORTH VIN-1XKYD49X3PJ239727 | $ 2,976 | $ 35,712 | $ 35,712 | $ 35,712 | $ 35,712 | $ 35,712 |
| CLASS 1BB CROSSROADS CONTRACT #2 KENWORTH VIN-1XKYD49X9PJ239778 & KENWORTH VIN-1XKYD49X0PJ239779 | $ 6,891 | $ 82,692 | $ 82,692 | $ 82,692 | $ 82,692 | $ 82,692 |
| Other Lease | $ - | | | | | |
| Taxes | $ - | $ - | $ - | $ 50,000 | $ 50,000 | $ 50,000 |
| Unsecured Claims | $ - | $ 50,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 50,000 |
| Adequate Protection Plan Payments | $ - | | | $ - | $ - | $ - |
| Total Scheduled SECURED Plan Payments | $ 93,466 | $ 1,135,591 | $ 1,161,651 | $ 1,191,269 | $ 1,086,260 | $ 1,028,139 |
| Cash After Operations & Debt Service | $ 5,648 | $ (40,297) | $ 26,743 | $ 80,313 | $ 236,185 | $ 333,979 |
| Cash Carryforward From Prior Period | $ 45,305 | $ 50,953 | $ 10,656 | $ 37,399 | $ 117,711 | $ 353,896 |
| Cash Carryforward | $ 50,953 | $ 10,656 | $ 37,399 | $ 117,711 | $ 353,896 | $ 687,875 |

| (1) Debtor's revenue projections are based on current trends. Income may be less if assumptions do not materialize. |
| (2) In no event does the Debtor anticipate income less than the amount necessary to make the proposed plan payments. |
| (3) Cash basis budget --- time lag in receivables may impact cash available at endof of period |
| (4) Allocation of Unalllocated Plan Payment Funds Reduces Cash Available |
| (5) Reflects actual charges paid & unallocated |
| (6) Funds projected to be available but not allocated to secured or unsecured claims |